UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PRINCESS SAKYI, individually and on Behalf of All Other Persons Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AVEDA CORPORATION,<br>251 Little Falls Dr., Wilmington, DE, 19808<br><br>BEAUTY BASICS, INC. d/b/a AVEDA INSTITUTES SOUTH,<br>113 S. Pine St.,<br>Hammond, La. 70403<br><br>THE ESTEE LAUDER COMPANIES INC.,767 Fifth Avenue,<br>New York, NY 10154.,<br><br>Defendants. | Civil Action No.: 1:17-cv-01863-BAH |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION**

I.   **INTRODUCTION**

Defendant Beauty Basics, Inc. ("Defendant" or "Beauty Basics") drafted and propagated a form arbitration agreement, with a sweeping class action waiver, to resolve disputes with its student employees, including Princess Sakyi ("Plaintiff" or "Ms. Sakyi"). The National Labor Relations Board ("NLRB") has found that agreements of this kind violate the National Labor Relations Act ("NLRA") because the agreement impinges on the substantive right of workers to pursue work-related legal claims together. Congress entrusted the NLRB with administering the

NLRA and, accordingly, this Circuit accords great deference to the NLRB's interpretation of the statute. The Sixth, Seventh and Ninth Circuits have deferred to the interpretation of the NLRB in finding class action waivers similar to Beauty Basics' unenforceable. This Court should do the same.[1]

## II.   LEGAL STANDARD

In enacting the NLRA, Congress established the Board and charged it with the primary authority to interpret and apply the statute. *Garner v. Teamsters, Chauffeurs & Helpers Local 776*, 346 U.S. 485, 490 (1953). Accordingly, the Board is "free to adopt any reasonable construction of the [NLRA]," *Andrews v. D.C. Police & Firefighters Ret. & Relief Bd.*, 991 A.2d 763, 771 n.15 (D.C. Cir, 2010). And the Board's construction of the NLRA will be upheld so long as it is "reasonably defensible." *Agri Processor Co. v. NLRB*, 379 U.S. App. D.C. 318, 325, 514 F.3d 1, 8 (D.C. 2008) *see also City of Arlington v. FCC*, 133 S. Ct. 1863, 1870-71 (2013) (to reject agency interpretation of statute within its expertise requires showing that "the statutory text forecloses" agency's interpretation). Questions of law regarding other statutes are reviewed *de novo*. *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 144 (2002).

When addressing the interactions of federal statutes, courts are not supposed to go out looking for trouble: they may not "pick and choose among congressional enactments." *Morton v. Mancari*, 417 U.S. 535, 551 (1974). Rather, they must employ a strong presumption that the statutes may both be given effect. *See id*. "[N]o legislation pursues its purposes at all costs." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (U.S. 2013) (quoting *Rodriguez v. United States*, 480 U. S. 522, 525-526, 107 S. Ct. 1391, 94 L. Ed. 2d 533 (1987) (per curiam)).

---

[1] If the Court does not strike the waiver, and is inclined to permit this matter to proceed to arbitration, Plaintiff respectfully requests the opportunity to sever the case so that only the dispute with Beauty Basics is stayed and moved to arbitration. Plaintiff makes this request because there is no arbitration agreement between Princess Sakyi and Beauty Basics' co-Defendants, Estee Lauder and Aveda Corporation. Hence, there is no basis for the dispute with respect to those parties to be stayed.

As the FAA saving clause provides, an arbitration contract may not be enforced where, as here, "grounds [ ] exist at law or in equity for the revocation of any contract." 9 USCS § 2.

### III.   FACTUAL BACKGROUND

Beauty Basics runs cosmetology programs known as Aveda Institutes in several cities, including Washington D.C.  *See* Amended Complaint, Oct. 24, 2017 (Doc. 10) ("Am. Comp."), at ¶ 13.  Plaintiff Princess Sakyi ("Plaintiff") was enrolled in the Washington D.C. Aveda Institute between April 2016 to May 2017. Am. Comp. ¶ 9.  Before matriculating, Ms. Sakyi was told that she would receive specialized and supervised training at the Aveda Institute while receiving a top-rate education in cosmetology. Am. Comp. ¶¶ 15-16. While Defendant may consider Ms. Sakyi and other Aveda Institute enrollees to be "trainees" for purposes of labor laws, they actually serve as employees who are economically integrated into Defendant's profitable business, and are controlled by Defendants' common policies and practices. Am. Comp. ¶ 21. Instead of receiving specialized, educational training, students enrolled at the Aveda Institute spend the vast majority of their time as line employees, performing simple, repetitive tasks for Aveda clients without supervision, such as straightforward nail or hair jobs. Am. Comp. at ¶ 19.

The work performed by Ms. Sakyi and other Aveda Institute students primarily benefitted Defendants, as opposed to the students.  The students were not trained by licensed educators in the "latest styles and techniques," as Defendant had promised, but rather performed menial, repetitive work for which the Defendant received payment from customers, but student employees received no hourly wage.  Am. Comp. ¶ 22. Furthermore, Defendants also required Ms. Sakyi and other students to show customers Aveda-brand products to try to sell the products to customers. Am. Comp. ¶ 24. Defendants also required students to fill in on the retail sales

floor, performing general sales and other duties for Defendants that were unrelated to students' degree. Am. Comp. ¶ 24.

Ms. Sakyi acknowledges that in order to qualify for licensure in cosmetology in Washington D.C., a certain amount of training hours in various aspects of cosmetology work is required. Am. Comp. ¶ 23. However, while this required training is to be spent learning a wide variety of areas in cosmetology, Defendant required Ms. Sakyi and other students to perform excessive work in certain areas, far exceeding the requirements of licensure, and further demonstrating that the work was primarily not for the students' benefit but for Defendant's. Am. Comp. ¶ 23. Ms. Sakyi and other students were required to spend so much time in the salon performing simple hair and nail jobs that they did not receive the coursework necessary to be properly prepared for the state board exam. Am. Comp. ¶ 26. Students had to complain to Defendants in order to receive the necessary coursework but were not provided with it until after they graduated, which delayed the start of the students' cosmetology careers and forced them to spend additional resources coming into the Aveda Institute for weeks after the program had ended. Am. Comp. ¶ 26.

Had Defendants disclosed to Ms. Sakyi and other students the true nature of the Aveda Institute's cosmetology program, including but not limited to the amount of time they would spend on repetitive, comparatively unskilled nail and hair work, the students would have chosen another cosmetology program.

On these and other allegations set forth in the Amended Complaint, Plaintiff, on behalf of herself and other similarly situated student employees, brings claims under the Washington D.C. Minimum Wage Revision Act, the Wage Payment Collection Law, and the Consumer Protection

and Procedures Act against Beauty Basics and two co-defendants: Aveda Corporation and Estee Lauder.

### IV.    ARGUMENT

As Defendant admits, its arbitration agreement with Ms. Sakyi and its other employees contains a class action waiver:

> **Any dispute I may bring against Aveda Institute (the "Institute"), or any of its parents, subsidiaries, officers, directors, or employees without limitation, or which the Institute may bring against me, no matter how characterized, pleaded or styled, shall be resolved by binding arbitration pursuant to the Federal Arbitration Act, conducted by the American Arbitration Association (the "AAA") under its Consumer Arbitration Rules ("Consumer Rules"), and decided by a single arbitrator. […] I agree that any dispute or claim I may bring shall be brought solely in my individual capacity, and not as a plaintiff or class member in any purported class action, representative proceeding, mass action or consolidated action.**

*See* Defendant's Memorandum In Support of Defendant Beauty Basics' Motion to Dismiss and Compel Arbitration (Doc. 25) (Feb. 12, 2018). This provision violates the substantive rights of Plaintiff and her co-workers to pursue work-related legal claims together under the NLRA and the Norris-LaGuardia Act ("NLA").

### A.  Defendant's class action waiver is unlawful under the NLRA

First, under the NLRA, as the Ninth Circuit wrote, "[c]oncerted – the right of employees to act *together* – is the essential, substantive right established by the NLRA." 29 U.S.C. § 157. [Defendant] interfered with that right by requiring its employees to resolve all of their legal claims in 'separate proceedings.'" *Morris v. Ernst & Young, LLP*, 2016 U.S. App. LEXIS 15638, *6 (9th Cir. Cal. Aug. 22, 2016); *see also Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1154 (7th Cir. 2016) ("Section 7's plain language controls . . . and protects collective legal processes. Along with Section 8, it renders unenforceable any contract provision purporting to waive employees' access to such remedies."); *NLRB v. Alt. Entm't, Inc.*, 858 F.3d 393, 403 (6th Cir.

5

2017) ("[A]n arbitration provision that attempts to eliminate employees' right to engage in concerted legal activity is unenforceable."). Defendant's arbitration agreement is similarly unenforceable under the NLRA because it requires its student employees to proceed individually, rather than collectively in a single action.

The Supreme Court has "often reaffirmed that the task of defining the scope of [NLRA rights] 'is for the Board to perform in the first instance as it considers the wide variety of cases that come before it.'" *NLRB v. City Disposal Sys. Inc.*, 465 U.S. 822, 829 (1984) (quoting *Eastex*, 437 U.S. at 568). "[C]onsiderable deference" thus attaches to the NLRB's interpretations of the NLRA. *Id.* Hence, any analysis must begin with the NLRB's treatment of similar contract terms.

The NLRB has concluded that an employer violates the NLRA:

> [W]hen it requires employees covered by the Act, as a condition of their employment, to sign an agreement that precludes them from filing joint, class, or collective claims addressing their wages, hours, or other working conditions against the employer in any forum, arbitral or judicial.

*D.R. Horton,* 357 N.L.R.B. 2277, 357 NLRB No. 184 (2012) ("*Horton I*"), *enf. denied* 737 F.3d 344 (5th Cir. 2013), slip op. at 1.

The NLRB's determination rested on two precepts. First, the NLRB interpreted the NLRA's statutory right "to engage in . . . concerted activities for the purpose of . . . mutual aid or protection" to include a right "to join together to pursue workplace grievances, including through litigation." *Id.* at 2 (interpreting 29 U.S.C. § 157). Second, the NLRB held that an employer may not circumvent the right to concerted legal activity by requiring that employees resolve all employment disputes individually. *Id.* at 4–5, 13 (interpreting 29 U.S.C. § 158). In other words, employees must be able to initiate a work-related legal claim together in some forum, whether in court, in arbitration, or somewhere else. *Id.* A concerted action waiver prevents this: employees

may only resolve disputes in a single forum—here, arbitration—and they may never do so in concert. *Id.*

The Supreme Court has instructed courts to review the NLRB's interpretations of the NLRA under the familiar two-step framework set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 &n.9 (1984). *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 536 (1992) (*Chevron* framework applies to NLRB constructions of the NLRA). The NLRB's reasonable interpretations of the NLRA command deference, especially here, where the NLRB has ruled on the validity of very same contract at issue.

Under *Chevron*, courts first examine "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. In analyzing Congressional intent, courts employ the "traditional tools of statutory construction," *id.* at 843 & n. 9, and not only look at the precise statutory section in question, but also analyze the provision in the context of the governing statute as a whole, presuming congressional intent to create a "'symmetrical and coherent regulatory scheme.'" *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995)). If "the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43. If, however, statutory language is silent or ambiguous, the agency interpretation will be upheld if it is "based on a permissible construction of the statute." *Id.* at 843; *see also Quick*, 245 F.3d at 241 (*quoting Ford Motor Co.*, 441 U.S. at 497 (the NLRB's "construction of the NLRA will be upheld if it is 'reasonably defensible.'"); *Grane Health Care*, 712 F.3d at 149 (the Court will uphold the NLRB's legal interpretations if they are "rational and consistent with the [NLRA].").

Here, as the Ninth Circuit has held, the inquiry stops at step one because "the intent of Congress is clear from the statute and is consistent with the Board's interpretation." *Morris*, 2016 U.S. App. LEXIS 15638, at * 9. To ascertain whether the NLRA permits or forbids a class or collective action waiver, one must look to the words of the statute. The NLRA establishes the rights of employees in § 7. It provides that:

> The NLRA establishes the rights of employees in § 7. It provides that: Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.

29 U.S.C. § 157.

Section 8 enforces these rights by making it "an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [§ 7]." 29 U.S.C. § 158; *see Tigges v. AM Pizza, Inc.*, No. 16-10136-WGY, 2016 U.S. Dist. LEXIS 100366, at *44-45 (D. Mass. July 29, 2016) (describing relationship between sections; § 7 establishes rights and § 8 enforces them) *see also Curatola v. Titlemax of Tenn., Inc.*, No. 1:16-cv-01263, 2017 U.S. Dist. LEXIS 124594, at *9 (W.D. Tenn. June 8, 2017) ("Section 8 … [forbids] employers from interfering with or restraining employees' rights to collective action."). Section 7 protects a range of concerted employee activity, including the right to "seek to improve working conditions through resort to administrative and judicial forums." *Eastex*, 437 U.S. at 566; *see also City Disposal Sys.*, 465 U.S. at 835 ("There is no indication that Congress intended to limit [§ 7] protection to situations in which an employee's activity and that of his fellow employees combine with one another in any particular way."). Therefore, "a lawsuit filed in good faith by a group of employees to achieve more favorable terms or conditions of employment is 'concerted activity' under § 7 of the National Labor Relations Act." *Brady v.*

*NFL*, 644 F.3d 661, 673 (8th Cir. 2011). So too is the "filing by employees of a labor related civil action." *Altex Ready Mixed Concrete Corp. v. NLRB*, 542 F.2d 295, 297 (5th Cir. 1976). Courts regularly protect employees' right to pursue concerted work-related legal claims under § 7. *Mohave Elec. Coop., Inc. v. NLRB*, 206 F.3d 1183, 1189 (D.C. Cir. 2000) ("filing a civil action by a group of employees is protected activity" under § 7) (internal quotation marks and citation omitted); *Leviton Mfg. Co. v. NLRB*, 486 F.2d 686, 689 (1st Cir. 1973) (same).

It is also well-established that the NLRA establishes the right of employees – like the student employees here – to act in concert: "Employees shall have *the right* . . . to engage in other concerted activities for the purpose of collective bargaining or other mutual aid and protection." 29 U.S.C. § 157 (emphasis added); *Tigges*, 2016 U.S. Dist. LEXIS 100366, at *44-45 ("The language of Section 7 itself speaks of the 'right' it confers on employees."). Concerted action is the basic tenet of federal labor policy, and has formed the core of every significant federal labor statute leading up to the NLRA. *City Disposal Sys.*, 465 U.S. at 834–35 (describing history of the term "concert" in statutes affecting federal labor policy). Taken together, these two features of the NLRA establish the right of employees to pursue work-related legal claims, and to do so together. *See Tigges*, 2016 U.S. Dist. LEXIS 100366, at *51 ("What are the class actions before the Court, if not employees 'band[ing]' together, as a class, in 'confronting' their employer 'regarding the terms . . . of their employment?'"). The pursuit of a concerted work-related legal claim "clearly falls within the literal wording of § 7 that '[e]mployees shall have the right . . . to engage in . . . concerted activities for the purpose of . . . mutual aid or protection." *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 260 (1975) (quoting 29 U.S.C. § 157). The intent of Congress in § 7 is clear and comports with the NLRB's interpretation of the statute.

The same is true for the NLRB's interpretation of § 8's enforcement provisions. Section 8 establishes that "[i]t shall be an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157." 29 U.S.C. § 158. A class action waiver does just that: it prevents the initiation of any concerted work-related legal claim, in any forum. Preventing the exercise of a § 7 right strikes us as "interference" within the meaning of § 8. Thus, the NLRB's determination that a concerted action waiver violates § 8 is no surprise.

Section 8 has long been held to prevent employers from circumventing the NLRA's protection for concerted activity by requiring employees to agree to individual activity in its place. *National Licorice*, for example, involved a contract clause that discouraged workers from redressing grievances with the employer "in any way except personally." 309 U.S. at 360. This clause violated the NLRA. *Id.* at 361. The individual dispute resolution practice envisioned by the contract, and required by the employer, represented "a continuing means of thwarting the policy of the Act." *Id.*

Similarly, *J.H. Stone & Sons*, 125 F.2d 752 (7th Cir. 1942), concluded that individual dispute resolution requirements nullify the right to concerted activity established by § 7:

> By the clause in dispute, the employee bound himself to negotiate any differences with the employer and to submit such differences to arbitration. The result of this arbitration was final. Thus the employee was obligated to bargain individually and, in case of failure, was bound by the result of arbitration. This is the very antithesis of collective bargaining.

*Id.* at 756.

The class action waiver in this case is no different. Under the clause, the employee is obligated to pursue her claims individually and, no matter the outcome, is bound by the result. This restriction is the "very antithesis" of § 7's substantive right to pursue concerted work-

related legal claims. Section 7 rights would amount to very little if employers could simply require their waiver.

In sum, the NLRB's interpretation of § 7 and § 8 is correct. Section 7's "mutual aid or protection clause" includes the substantive right to collectively "seek to improve working conditions through resort to administrative and judicial forums." *Eastex*, 437 U.S. at 566; *accord City Disposal Sys.*, 465 U.S. at 834–35. Under § 8, an employer may not defeat the right by requiring employees to pursue all work-related legal claims individually. *See J.I. Case Co. v. NLRB*, 321 U.S. 332, 337 (1944) ("Individual contracts . . . may not be availed of to defeat or delay the procedures prescribed by the National Labor Relations Act"). The NLRA is unambiguous, and there is no need to proceed to the second step of *Chevron*.[2] Applied to the Beauty Basics contract, § 7 and § 8 make the terms of the class action waiver unenforceable. It is so because the waiver interferes with a protected § 7 right in violation of § 8.

**B. Defendant's class action waiver is unlawful under the NLA**

For similar reasons as under the NLRA, Beauty Basics' class action waiver is unlawful under the Norris-LaGuardia Act ("NLA"). As with the NLRA, the NLRB has found that arbitration agreements with class action waivers violate the NLA since they seek to prohibit "'a lawful means [of] aiding any person participating or interested in' the lawsuit (Sec. 4) such as pursuing or joining a putative class action – would be an 'undertaking or promise in conflict with the public policy' of the statute (Sec. 3)." *D.R. Horton I*, at p. 6 (quoting the NLA).

The NLRB's reasoning is unassailable when the plain language and structure of the statute is considered. Section 2 of the NLA declares it to be the "public policy of the United

---

[2] Even assuming, *arguendo*, that the analysis were undertaken, the only conclusion could be that "[t]he Board's holding is a permissible construction of 'concerted activities for . . . mutual aid or protection' by the agency charged by Congress with enforcement of the Act." *Weingarten*, 420 U.S. at 260 (quoting 29 U.S.C. § 157).

States" that the individual employee be free of "interference" or "restraint" by employers when they engage in "concerted activities for the purpose of . . . mutual aid or protection." 29 U.S.C. § 102. Section 3 of the NLA provides that, "any undertaking or promise" that is contrary to the policy declared in section 2 "shall not be enforceable in any court of the United States." 29 U.S.C. § 103.  Thus, taken together, sections 2 and 3 of the Act provide that "any . . . undertaking or promise in conflict with the public policy" that employees "shall be free from the interference . . . of employers in . . . concerted activities for the purpose of . . . mutual aid or protection" "shall not be enforceable in any court of the United States and shall not afford any basis for the granting of legal or equitable relief by any such court." 29 U.S.C. § 102, 103. On their face, these provisions bar enforcing Beauty Basics' arbitration agreement with the class action waiver.

The language and structure of section 3 of the Act make clear that the NLA was intended to do more than merely bar enforcement of contracts prohibiting union membership. It denies enforcement to a broad array of "yellow dog contracts" that would bar concerted activity to improve working conditions. Section 3 prohibits enforcement of two categories of contracts: (1) "Any undertaking or promise, such as is described in this section" and (2) "*any other undertaking or promise in conflict with the public policy declared in section 102* of this title." 29 U.S.C. § 103 (emphasis added).

> The undertakings or promises "described in this section" are:
>
> Every undertaking or promise hereafter made, whether written or oral, express or implied, constituting or contained in any contract or agreement of hiring or employment between any individual, firm, company, association, or corporation, and any employee or prospective employee of the same, whereby
>
> (a) Either party to such contract or agreement undertakes or promises not to join, become, or remain a member of any labor organization or of any employer organization; or

> (b) Either party to such contract or agreement undertakes or promises that he will withdraw from an employment relation in the event that he joins, becomes, or remains a member of any labor organization or of any employer organization.

29 U.S.C. § 103.  Thus, the first category of unenforceable contracts -- the expressly barred undertakings or promises -- are those to refrain from joining or to withdraw from membership in labor organizations. Consequently, the second category of unenforceable contracts -- "any *other* undertaking or promise in conflict with the public policy declared in section 102 of this title" (emphasis added) -- necessarily encompasses a wider array of agreements not to take concerted action to improve working conditions, such as the agreement at issue here.

Importantly, section 4 of the Act evidences Congress' intent to protect a broad range of concerted activity intended to improve working conditions, expressly including collective litigation. Section 4 provides:

> No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute . . . from doing, whether singly or in concert, any of the following acts: . . . . (d) By all lawful means aiding any person participating or interested in any labor dispute who is . . . prosecuting, any action or suit in any court of the United States or of any State; . . . (h) Agreeing with other persons to do or not to do any of the acts heretofore specified.

29. U.S.C. § 104.  Taken together, subsections (d) and (h) of section 4 of the Act make clear that Congress intended that joining with another person in a suit seeking a remedy in a labor dispute to be within the category of "concerted activity for the purpose of . . . mutual aid and protection." Such group legal action is insulated from employer "interference, restraint, or coercion" by section 2. As a result, "any undertaking or promise" made by the employee purportedly to eschew the right to engage in such group resort is unenforceable under section 3 – it is contrary to the "public policy of the United States."  This necessarily encompasses collective enforcement

13

of workplace rights presented by lawsuits such as this. *See supra* at pp. 6-9 (setting forth precedent, under the NLRA's identically-phrased Section 7, as to why protected concerted activities includes collective action lawsuits).

### C. The FAA's Savings Clause Demands that the Beauty Basics' Class Action Waiver Be Stricken Since It Violates Federal Law

The FAA provides that arbitration agreements are generally enforceable, but its savings clause carves out an exception when "grounds exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The savings clause "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Here, the contract with the class action waiver cannot be enforced because it violates Plaintiff's rights under the NLRA and NLA, and there is "no doubt that illegal promises will not be enforced in cases controlled by the federal law." *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982); *see also Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 444 (2006) (noting that illegality is a ground preventing enforcement under § 2).

This interpretation is consistent with recent Supreme Court caselaw on arbitration, including *Concepcion* and *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013). Under *Concepcion*, contract defenses cannot fall within the savings clause if they "derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339. Here, the illegality of the class action waiver has nothing to do with arbitration as a forum. As the Ninth Circuit said, it would be a violation for an employer to mandate that all disputes be heard in court if the provision also contained a class action waiver since "the problem

with the contract at issue is not that it requires arbitration; it is that the contract term defeats a substantive federal right to pursue concerted work-related legal claims." *Morris*, 2016 U.S. App. LEXIS 15638, at * 18; *see also Alt. Entm't, Inc.*, 858 F3d. at 403 ("The NLRA prohibits mandatory arbitration provisions barring collective or class action suits because they interfere with employees' right to engage in concerted activity, not because they mandate arbitration.").

As for *Italian Colors*, the Seventh Circuit aptly observed that cases like this are "actually the inverse…."

> There the plaintiffs argued that requiring them to litigate individually "contravene[d] the policies of the antitrust laws." 133 S. Ct. at 2309. The Court rejected this argument, noting that "the antitrust laws do not guarantee an affordable procedural path to the vindication of every claim." With regard to the enforcement of the antitrust laws, the Court commented that "no legislation pursues its purposes at all costs." *Id*. (quoting *Rodriguez v. United States*, 480 U.S. 522, 525–526 (1987) (per curiam)). In this case, the shoe is on the other foot. The FAA does not "pursue its purposes at all costs"—that is why it contains a saving clause. Id. If these statutes are to be harmonized— and according to all the traditional rules of statutory construction, they must be—it is through the FAA's saving clause, which provides for the very situation at hand. Because the NLRA renders [the employer's] arbitration provision illegal, the FAA does not mandate its enforcement.

*Lewis*, 823 F.3d at 1159.

This is important because Plaintiff anticipates that the Defendant will argue that the NLRA and NLA somehow conflict with the FAA and that, given the conflict, the NLRA and NLA must give. Such an interpretation is misguided, however, and Defendant must overcome a heavy presumption to show that a conflict exists. "[W]hen two statutes are capable of co-existence ... it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Vimar Seguros*, 515 U.S. at 533 (applying canon to find FAA compatible with other statute) (quoting *Morton*, 417 U.S. at 551). Defendant has not carried its burden because there is no conflict between the NLRA and the FAA, let alone an

irreconcilable one. As the Seventh Circuit said, "[b]ecause the provision at issue is unlawful under Section 7 of the NLRA, it is illegal, and meets the criteria of the FAA's saving clause for nonenforcement. Here, the NLRA and FAA work hand in glove." *Lewis*, 823 F.3d at 1157; *see also NLRB v. Alt. Entm't, Inc.*, 858 F.3d at 402 ("The NLRA prohibits the arbitration provision on grounds that would apply to any contractual provision, and thus triggers the FAA's saving clause. Because of the FAA's saving clause, the statutes work in harmony.").

In addition, a finding that the NLRA and NLA are in conflict with the FAA would render the FAA's saving clause a nullity. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (noting the "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant"). Illegality is a standard contract defense contemplated by the FAA's saving clause. *See Buckeye Check Cashing*, 546 U.S. at 444. If the NLRA and NLA do not render an arbitration provision sufficiently illegal to trigger the saving clause, the saving clause does not mean what it says.

Finally, even assuming, *arguendo*, that the statutes did conflict, it is the FAA that would have to give, rather than the NLRA and/or the NLA. Both were passed *after* the FAA. The NLA even contains a section that explicitly repealed "[a]ll acts and parts of acts in conflict with" its provisions. *See* Sec. 15, 29 U.S.C. § 115. Moreover, the rights conferred by the NLRA and NLA are substantive, rather than procedural, and therefore cannot be waived in arbitration agreements. *See Morris*, at 18-19; 29 U.S.C. § 158 (speaking to the "[r]*ight* of employees as to organization.") (emphasis added); *see also Alt Entm't, Inc.*, 858 F3d. at 407 ("An employer cannot avoid this core tenet of federal labor law simply by nesting a waiver of the right to collective legal action in an arbitration provision."). This tenet is a fundamental component of

the Supreme Court's arbitration jurisprudence: "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi*, 473 U.S. at 628. Thus, if a contract term in an arbitration agreement "operate[s] . . . as a prospective waiver of a party's right to pursue statutory remedies for [substantive rights], we would have little hesitation in condemning the agreement." *Id.* at 637 n.19; *see also Am. Exp. Co.*, 133 S. Ct. at 2310; *Green Tree Fin. Corp.-Al. v. Randolph*, 531 U.S. 79, 90 (2000); *Gilmer*, 500 U.S. at 28; *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 240 (1987). The FAA does not mandate the enforcement of contract terms that waive substantive federal rights. Thus, when an arbitration contract professes the waiver of a substantive federal right, the FAA's saving clause prevents a conflict between the statutes by causing the FAA's enforcement mandate to yield. *See Gaffers v. Kelly Servs.*, No. 16-10128, 2016 U.S. Dist. LEXIS 112789, at *23 (E.D. Mich. Aug. 24, 2016) ("[T]he agreement to arbitrate in this case cannot be enforced to bar the plaintiffs from pursuing a collective action in any forum to resolve their unpaid overtime claims.").

V.   **CONCLUSION**

For the foregoing reasons, Defendant's motion should be denied in its entirety.


Dated:  February 26, 2018                     */s/ Jason S. Rathod*
                                              Nicholas A. Migliaccio
                                              Jason S. Rathod
                                              MIGLIACCIO & RATHOD LLP
                                              412 H Street N.E.
                                              Ste. 302
                                              Washington, D.C. 20002
                                              Tel: (202) 470-3520
                                              Email: jrathod@classlawdc.com